**STATE OF NORTH CAROLINA, ex rel. the NORTH CAROLINA UTILITIES COMMISSION, and Albemarle Paper Company, Plaintiffs,**

v.

**The INTERSTATE COMMERCE COMMISSION and the United States of America, Defendants,**

and

**Aberdeen & Rockfish Railroad Company et al., Intervening Defendants.**

**Civ. No. 4315.**

United States District Court, E. D. North Carolina, Raleigh Division.

May 1, 1975.

Edward B. Hipp, Commission Atty., Maurice W. Horne, Asst. Commission Atty., and John R. Molm, Associate Commission Atty., Raleigh, N. C., for

plaintiff North Carolina Utilities Commission.

F. Kent Burns, Raleigh, N. C., for plaintiff Albemarle Paper Co.

Fritz R. Kahn, Gen. Counsel, and Hanford O'Hara, Atty., Interstate Commerce Commission, Washington, D. C., for defendant Interstate Commerce Commission.

Thomas E. Kauper, Asst. Atty. Gen., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., and Thomas P. McNamara, U. S. Atty., Raleigh, N. C., for defendant United States of America.

James L. Tapley and James L. Howe, III, Washington, D. C., Albert B. Russ, Jr., Richmond, Va., and John M. Simms, William T. Joyner, Jr., and Thomas F. Ellis, Raleigh, N. C., for intervening defendants.

Before CRAVEN, Circuit Judge, BUTLER, Chief District Judge, and DUPREE, District Judge.

PER CURIAM:

This is a suit brought before a three-judge court by the North Carolina Utilities Commission seeking to enjoin, set aside, annul and suspend an order of the Interstate Commerce Commission entered April 10, 1973. 49 U.S.C. § 17(9); 28 U.S.C. §§ 1336, 2284, 2322, 2325.

This lawsuit is a sequel to prior litigation reported under the name North Carolina ex rel. North Carolina Utilities Commission v. Interstate Commerce Commission, 347 F.Supp. 103 (E.D.N.C. 1972), aff'd, 410 U.S. 919, 93 S.Ct. 1362, 35 L.Ed.2d 582 (1973). In that case it was held that action by the Interstate Commerce Commission raising intrastate railroad freight rates by six percent—the same percentage as interstate rates were increased by the Commission in Ex Parte 262—was valid.

Subsequently the Commission has issued Ex Parte 265 and Ex Parte 267 further increasing interstate freight rates by 11 percent. It is the Commission's order that intrastate rates also be increased 11 percent that is sought to be annulled and set aside. North Carolina argues that the Interstate Commerce Commission lacks power and jurisdiction to require a *second* intrastate rate increase to bring intrastate rates in line with interstate rates unless there has been intervening state action by the state commission charged with the duty of establishing intrastate rates. In this case North Carolina last exercised authority over intrastate rates on August 29, 1969. These were increased six percent as the result of Ex Parte 262. The state insists they cannot again be increased because the intrastate rates effective after Ex Parte 262 were not "made or imposed by authority of any State," 49 U.S.C. § 13(3), but were instead made or imposed by the Interstate Commerce Commission. The same contention is derived from Section 13(4) that reads "whenever in any such investigation the Commission . . . finds that any such rate . . . causes . . . ." Thus, runs the argument, the authority of the I.C.C. to investigate "any such rate" refers to "any rate . . . made or imposed by the authority of any State" in Section 13(3), and North Carolina has not imposed the six percent increased rate caused by Ex Parte 262.

We think the argument is overly simplistic and that this case is controlled by its predecessor State of North Carolina ex rel. North Carolina Utilities Commission v. Interstate Commerce Commission, *supra*. In that case we noted a similar argument and disposed of it as follows:

The plaintiffs contend that an essential prerequisite to action by the Interstate Commerce Commission in a Section 13(4) proceeding is that the intrastate rates have been "made or imposed" by the State. Section 13(4) clearly grants the Interstate Commerce Commission authority to investigate intrastate rates. It is beyond the imagination to believe that rates lawfully existing within a state which constitutionally has the power to regu-

late intrastate commerce and has an established regulatory agency to do so are not "made or imposed" by the State.

347 F.Supp. at 109.

█ It is true that Judge Larkins, writing for the court in the preceding case, wrote in a wholly different context. But in our view, intrastate freight rates remain those established by the North Carolina Utilities Commission even though increased by six percent or 11 percent or any other percent across the board. In short, we view this as a revenue case rather than a rate case. It is the province of the national Commission to protect interstate commerce from any undue burden that results from lower intrastate rates. In requiring an across-the-board percentage increase, the national Commission does not set or change any particular commodity rate but instead superimposes upon the rate that has been determined by the state commission a percentage increase thought necessary to protect interstate commerce by rail.

█ We hold that a state commission by inaction on intrastate rates may not paralyze national power to remove burdens upon or discrimination against interstate commerce a second or successive time. Congress could not have meant to empower the Interstate Commerce Commission to bring intrastate rates into line with interstate rates once only and never again. To so hold does not strip the state commission of its power and responsibility within its sphere. The underlying commodity rates are still those of the state with respect to intrastate transportation and are subject now to reconsideration and proper change as they have been before. That there may be superimposed above those state rates a flat percentage increase certainly changes the amount of money the shipper must pay but does not change the rate in comparison with the rate for other commodities.

The relief sought will be denied and the Complaint dismissed by entry of an appropriate judgment.